**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KAJDJA WICKER,

          *Plaintiff*,

*v.*

COMMISSIONER OF SOCIAL
SECURITY,

          *Defendant*.

_____/

CASE NO. 18-11276

DISTRICT JUDGE VICTORIA ROBERTS

MAGISTRATE JUDGE PATRICIA T. MORRIS

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT</u>
### <u>(ECF Nos. 19, 20)</u>

## I.    <u>RECOMMENDATION</u>

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 19) be **DENIED**, Defendant's Motion (ECF No. 20) be **GRANTED**, and that this case be **AFFIRMED**.

## II.    <u>REPORT</u>

### A.  Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing a final decision by the Commissioner of Social Security ("Commissioner")

1

denying Plaintiff's claim for a period of disability, Disability Insurance Benefits ("DIB") , and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act 42 U.S.C. § 401 and 404 *et seq.* (ECF No. 3). The matter is currently before the Court on cross-motions for summary judgment. (ECF Nos. 19, 20).

Plaintiff Kajdja Wicker filed an application for SSI on December 4, 2014, alleging that her disability began on February 10, 2011. (ECF No. 15, PageID.213.) The Commissioner denied her claim on June 3, 2015. (ECF No. 15, PageID.144.) Plaintiff then then requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on March 1, 2017 before ALJ Kevin Fallis. (ECF No. 15, PageID.74-106.) At the hearing, Plaintiff—represented by her attorney, Karen Lopitran—testified, alongside Vocational Expert ("VE") Michelle Robb. (*Id.*). The ALJ's written decision, issued July 6, 2017, found Plaintiff not disabled. (ECF No. 15, PageID.56-73.) On February 22, 2018, the Appeals Council denied review, (ECF No. 15, PageID.46-48) and Plaintiff filed for judicial review of that final decision on April 23, 2018. (ECF No. 1).

### B.  Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C. Framework for Disability Determinations

Under the Act, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . .

> physical or mental ability to do basic work activities," benefits
> are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial
> gainful activity, has a severe impairment that is expected to last
> for at least twelve months, and the severe impairment meets or
> equals one of the impairments listed in the regulations, the
> claimant is conclusively presumed to be disabled regardless of
> age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past
> relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her
> past relevant work, if other work exists in the national economy
> that plaintiff can perform, in view of his or her age, education,
> and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528,

534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the

existence and severity of limitations caused by [his or] her impairments and the fact that

she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The burden transfers to the Commissioner if the

analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v.*

*Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner

is required to show that "other jobs in significant numbers exist in the national economy

that [the claimant] could perform given [his or] her RFC [residual functional capacity] and

considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§

416.920(a)(4)(v), (g)).

Under the authority of the Social Security Act, the SSA has promulgated regulations

that provide for the payment of disabled child's insurance benefits if the claimant is at least

eighteen years old and has a disability that began before age twenty-two (20 C.F.R. 404.350(a) (5) (2013). A claimant must establish a medically determinable physical or mental impairment (expected to last at least twelve months or result in death) that rendered her unable to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). The regulations provide a five-step sequential evaluation for evaluating disability claims. 20 C.F.R. § 404.1520.

### D. ALJ Findings

Following the five-step sequential analysis, the ALJ found Plaintiff not disabled under the Act. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of the application, *i.e.*, December 1, 2014. (ECF No. 15, PageID.58.) At Step Two, the ALJ concluded that the following impairments qualified as severe: "degenerative disc disease, neuropathy, congestive heart failure, diabetes mellitus, glaucoma, obesity, depression, anxiety, attention deficit hyperactivity disorder (ADHD) and agoraphobia [sic]." (*Id*.) The ALJ also decided, however, that none of these met or medically equaled a listed impairment at Step Three. (ECF No. 15, PageID.58-61.) Following this, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following additional limitations:

> Except that the claimant can sit or stand alternatively provided she is not off task more than 10% of the work period. The claimant is unable to climb ladders, ropes, or scaffolds and can occasionally climb stairs. The claimant should avoid all use of hazardous, moving machinery and should avoid all exposure to unprotected heights. In addition, the claimant is limited to simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements and involving only simple work related decisions and routine work place changes. The claimant is also limited to only occasional superficial contact with the public.

(Tr. 17). The ALJ found Plaintiff could not perform her past relevant work as a certified nurse aide which was characterized as heavy work. (ECF No. 15, PageID.67.) At Step Five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that the claimant can perform, and thus found Plaintiff not disabled. (ECF No. 15, PageID.61-69.)

### E.  Administrative Record

#### 1.  Medical Evidence

I have reviewed the medical records and will discuss them as necessary in the analysis below.

#### 2.  Adult Function Report

Plaintiff completed a function report for her disability benefits application. (ECF No. 15, PageID.246-253.) Plaintiff indicated that she cares for her children, helps them with homework and hygiene, and that she has no problem with her own personal care. (ECF No. 15, PageID.247.) Plaintiff described a typical day as "wake up my kids for school, take my meds. Feed kids, off to school my kids go. I do my personal hygiene care, plan dinner, light house cleaning, by noon I'm completely overwhelmed because I'm either in pain or I'm overwhelmed to go to Dr. or hospital." (ECF No. 15, PageID.247.) Plaintiff uses an "app" to remind her to take her medications and uses reminders to help her remember appointments. (ECF No. 15, PageID.248.) Plaintiff cooks complete meals, generally on a daily basis for "about an hour or so" and she starts laundry and tries to clean her house "for as long as I can tolerate" which is "around an hour or two to halfway

complete" and she "jump[s] around from one task to another one a lot, never completing any." (ECF No. 15, PageID.248-249.) Plaintiff goes outside "only as tolerated" because her anxiety increases but she is able to shop in stores for "food, household supplies, children clothes and shoes" but she does not shop often, and she does not "tolerate being in a public place longer than 30 minutes to an hour." (ECF No. 15, PageID.249.) Plaintiff likes to read but feels she can no longer stay focused or remember well enough to do so, and she does not socialize or go places other than to her medical appointments or her children's appointments. (ECF No. 15, PageID.250.) Plaintiff stated that she can walk for "about five minutes or so" and can follow written instruction "okay but I may have to read it several times to make sure I got it" and as to oral instructions, "okay but I may have to ask you to repeat the instruction several times." (ECF No. 15, PageID.252.) Plaintiff has no issues with authority, handles stress "not well, I don't stay focused enough to allow it to consume me," and does not handle change well. (ECF No. 15, PageID.252.)

### 3. **Administrative Hearing**

At the hearing, Plaintiff testified that she had lived with her mother since September 2016 and had lived with another person before that. (ECF No. 15, PageID.78-79.) Her children, ages 11 and 18, live with her also. (ECF No. 15, PageID.79.) Plaintiff's weight was about 190 pounds and she indicated that she gained approximately 50 pounds in the last year. (ECF No. 15, PageID.79-80.) Plaintiff is able to drive, she graduated from high school and she achieved a certificate in nursing aide and phlebotomy. (ECF No. 15, PageID.80.) Plaintiff takes ten medications and she experiences tiredness as a side effect of them. (ECF No. 15, PageID.82.) When asked what the major impediment is to her

7

working, she responded, "People, going into buildings, people. What do you call that, anxiety. I think that's what that's called." (ECF No. 15, PageID.83.) She testified that she feels that kind of anxiety all the time, "[k]nowing I got to leave the house" and that when she experiences anxiety, "I can't breathe. My heart, I feel like I'm about to die." (*Id.*) Plaintiff also has crying spells when she has to "go places with a lot of people." (ECF No. 15, PageID.84.) Her DHD causes her to "never focused on one thing, never finish anything. Everything's cluttered, scattered, never on time even like to my dad's funeral." (*Id.*) As to physical issues, Plaintiff has lower body pain that varies "between a seven and a 10" "[a]ny time it's cold, any time it rain. Sometimes just no reason, sometimes if I just try to move around more. It feel like they go numb and ache and – [m]y legs and my feet." (ECF No. 15, PageID.85.) She stated her legs and feet go numb every day. (ECF No. 15, PageID.86.) She also cited that recently, since September 2016, her "pain is intensifying at night" but that she had not reported this to her doctors. (ECF No. 15, PageID.85-86.)

Plaintiff stated that she could not lift and carry a gallon of milk for two to three hours a day, she could sit for "about 45 minutes", and stand for "[a]bout five minutes. (ECF No. 15, PageID.87.) Plaintiff tries to do chores, starts dishes and laundry, tries to cook and goes shopping about twice a month "in the middle of the night" with other people. (ECF No. 15, PageID.87-88.) Plaintiff also tried "a lot" to mow the lawn "because the doctors told me that the more I exercise, the better it would get but it didn't." (ECF No. 15, PageID.88.) Plaintiff has no problems with personal hygiene but does not sleep well. (ECF No. 15, PageID.89.) Plaintiff does not socialize, go to church, or take trips. (ECF No. 15, PageID.90.) Plaintiff smokes a half pack of cigarettes a day and drinks alcohol only about

twice a year. (ECF No. 15, PageID.91.)

When questioned by her attorney, Plaintiff indicated that she does yoga two days a week for about one and one-half to two hours. (ECF No. 15, PageID.94-95.) She also stated that since she only gets around two hours of sleep per night, "after about four days, four or five days…I just lay and cry, pray." (ECF No. 15, PageID.95.) Plaintiff suffered pain, loss of sleep and anxiety just in preparing to come to the hearing. (ECF No. 15, PageID.97.) She also indicated that her current medications do "help me get out. I just don't – can't stay long at all." (ECF No. 15, PageID.98.)

The ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who:

> would be allowed to sit or stand alternatively provided they weren't off task more than 10% of the work period. They could never climb ladders, ropes, or scaffolds. They could occasionally climb ramps or stairs. They would avoid all use of moving machinery. They would have to avoid all exposure to unprotected heights. Additionally this work would be limited to simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements [and] involving only simple work related decisions and routine work place changes. But could be occasional and superficial contact with the public.

(ECF No. 15, PageID.101-102.) The VE responded that such a person could not perform Plaintiff's past relevant work and could not perform any jobs at the medium level but could perform the following jobs at the light level of exertion: packer DOT 737.587-018 (180,000), inspector DOT 724.685-014 (92,000), and assembly positions DOT 725.384-010 (194,000). (ECF No. 15, PageID.102.) The ALJ then asked if the person were limited to no interaction with the public would the number of jobs available change and the VE

responded, "The same jobs and numbers will apply[.]" (*Id.*)

F. **Governing Law**

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations[1] carve the evidence "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513 (2016). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* § 404.1513(a) (2016). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* § 404.1513(d) (2016). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* § 404.1527(d).

---

[1] Various regulations were amended after the claim was filed. *See, e.g.*, *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017). The governing regulations here, however, expressly apply to claims filed before March 27, 2017, like Plaintiff's. See 20 C.F.R. § 404.1527.

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed her claim before March 27, 2017, she is entitled to the benefit of the treating-source rule. Under that rule, certain opinions from her treating physicians can receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(c)(2). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d). Thus, the ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to the treating source's opinion in the written determination. 20 C.F.R. § 404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

An ALJ must also analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996).[2] Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating

---

[2] Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016), the underlying regulation has remained materially unchanged, *see* 20. C.F.R. § 404.1529(c), and I agree with the courts in this District that have continued to apply SSR 96-7p to cases arising prior to its rescission. *See, e.g.*, *Cooper v. Comm'r of Soc. Sec.*, No. 16-cv-13477, 2017 WL 3923984, at *3 (E.D. Mich. August 21, 2017), *Rep. & Rec. adopted by* 2017 WL 3891971 (E.D. Mich. Sept. 9, 2017); *Tuttle v. Comm'r of Soc. Sec.*, No. 16-11144, 2017 WL 2928021, at *6 n. 3 (E.D. Mich. June 9, 2017), *Rep. & Rec. adopted by* 2017 WL 2905125 (E.D. Mich. July 7, 2017).

subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

### G. Analysis

Plaintiff contends that the ALJ: (1) failed to consider the combined effect of all her impairments at Step two and discounted the RFC of Jamie Brynoff, LLMSW, CADC; and (2) erred in concluding that her mental disorders did not meet Listing 12.06. (ECF No. 19.)

I will address each argument in turn.

### 1. The ALJ considered the combined effect of all Plaintiff's impairments and properly evaluated Ms. Brynoff's opinion

Plaintiff contends that the ALJ "addressed each impairment selectively and separately" and he "did not consider the combined effect of Wicker's impairments." (ECF No. 19, PageID.916.) Under 20 C.F.R. § 404.1523(c), the Commissioner "will consider the combined effect of all your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." However, "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of

13

the impairments in combination, where the ALJ specifically refers to 'a combination of impairments[.]'" *Loy v. Sec'y of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990). As noted by defense counsel, the ALJ in the instant case referred to "impairments" 14 times in his opinion. (ECF No. 20, PageID.940.) In addition, after the ALJ considered each impairment and the medical evidence of record in a very detailed fashion (ECF No. 15, PageID.61-67), the ALJ expressly stated that "[a]fter careful consideration of the evidence," he assessed the "claimant's medically determinable impairments" and then determined her residual functional capacity (RFC). (ECF No. 15, PageID.67.) Therefore, I find that the "substance of the ALJ's decision thus indicates that it did consider the total limiting effect of [plaintiff's] combined impairments." *Burton v. Comm'r of Soc. Sec.*, 702 F. App'x 436, 437 (6th Cir. 2017) (where ALJ considered multiple impairments in determining RFC, that was sufficient to show the ALJ considered the combined effects of plaintiff's impairments).

As to the ALJ's treatment of Ms. Brynoff's opinion, I also suggest that the ALJ did not err. The Regulations define "treating source" as an "acceptable medical source who provides [a claimant], or has provided [a claimant], with medical treatment or evaluation *and* who has, or has had, an *ongoing treatment relationship* with" a claimant. 20 C.F.R. § 404.1502 (emphasis added). Where an opinion from a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in a case record, the ALJ must give it "controlling weight." 20 C.F.R. § 404.1527(c)(2). If the opinion is not given controlling

weight, the ALJ must engage in the six-factor balancing test described in § 404.1527(c)(2)-(6).

Ms. Brynoff is a limited license master social worker and is a certified alcohol and drug abuse counselor and as such, she is not an acceptable medical source under the Regulations. *See* 20 C.F.R. §§ 404.1513(d); 416.913(d). However, these opinions should be considered in assessing the severity of a plaintiff's impairments but the ALJ is not required to accord these opinions any particular weight. *Taylor v. Comm'r of Soc. Sec.*, 2012 WL 1029299, at *6 (W.D. Mich. Mar. 26, 2012); SSR 06-03p, 2006 WL 2329939. The ALJ considered Ms. Brynoff's assessment that Plaintiff has "generally serious to no useful ability to function with regard to abilities and aptitudes required for unskilled and semi-skilled work" and that "claimant's symptoms would result in 4 or more absences from work per month." (ECF No. 15, PageID.66.) The ALJ "accorded little weight" to Ms. Brynoff's assessment because "it is not consistent with the medical evidence of record [that] reveals a moderate level of limitations with regard to claimant's mental disorders" that is in conflict with the evidence presented by Dr. Balunas which also showed "no more than a moderate level of impairment" as to mental impairments. (ECF No. 15, pageID.67.)

In addition, the assessment of Ms. Brynoff is in check-box format, with only mere diagnoses mentioned in handwritten form: agoraphobia, anxiety and paranoia. (ECF No. 15, PageID.827-829.) The assessment cites no tests, evaluations, therapeutic findings, or other medical evidence to support the conclusions. As such, it would not be entitled to much weight even if it were authored by an acceptable medical source. *See, e.g.*, *Ellars v. Comm'r of Soc. Sec.*, 2016 WL 2610234 at *2 (6th Cir. 2016) ("[T]he administrative law

15

judge properly gave a check-box form little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence."); *see also Hernandez v. Comm'r of Soc. Sec.*, 2016 WL 1055828 at *4 (6th Cir. 2016) ("Even if the ALJ erred in failing to give good reasons for not abiding by the treating physician rule, it was harmless error because the [medical source statement] here is 'weak evidence at best' and meets our patently deficient standard."); *accord Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). Consequently, the ALJ did not err in failing to rely on Ms. Brynoff's conclusory opinion or explain the little weight given to its.

## 2. The ALJ did not err in finding Plaintiff's impairments did not meet or equal Listing 12.06

Plaintiff challenges the ALJ's analysis as to Listing 12.06 which deals with anxiety and obsessive-compulsive disorders. Defendant contends that Plaintiff has waived this issue by recycling "nearly verbatim" a brief filed in another case that does not necessarily fit her case nor does it develop her arguments. (ECF No. 20, PageID.946-47.) Although Defendant raises a legitimate point, since I find her argument fails on the merits, I will not rely on waiver in this particular case.

Listing 12.06 requires either: (1) an extreme limitation of one, or marked limitation of two, of the paragraph B categories, or (2) a serious and persistent impairment, documented over a period of at least two years, with ongoing treatment and evidence of only marginal adjustment as indicated by the paragraph C criteria. See, 20 C.F.R. Pt. 404,

Subpt. P. App. 1, §§ 12.00, 12.06. Here, Plaintiff does not challenge the ALJ's findings under paragraph C, only those under paragraph B. (ECF No. , PageID.919.) Under the "B criteria" for this Listing, Plaintiff must show:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
> 1. Understand, remember, or apply information (see 12.00E1).
>
> 2. Interact with others (see 12.00E2).
>
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
>
> 4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, §12.06B (Jan. 2017). "Extreme limitation" means an inability to "function in [an] area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, § 12.00E(2)(e) (Jan. 2017). A "marked limitation" is one in which the claimant's ability to function in an area "independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, § 12.00E(2)(d) (Jan. 2017). A "moderate limitation," by contrast, leaves the claimant with "fair" functioning "independently, appropriately, effectively, and on a sustained basis . . . ." 20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, § 12.00E(2)(c) (Jan. 2017).

The four specific "B criteria" "areas" are also defined. First, "[u]understand, remember, or apply information . . . . refers to the abilities to learn, recall, and use information to perform work activities." 20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, § 12.00E(1) (Jan. 2017). Second, "[i]nteract with others . . . refers to the abilities to relate to

and work with supervisors, co-workers, and the public." 20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, § 12.00E(2) (Jan. 2017). Third, "[c]oncentrate, persist, or maintain pace . . . refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, § 12.00E(3) (Jan. 2017). Fourth, "[a]dapt or manage oneself . . . refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. pt. 404, subpt. P, App. 1-Part-A2, § 12.00E(4) (Jan. 2017).

In addition to these provisions, 20 C.F.R. § 404.1520a tells claimants that the Commissioner will also use a "special technique" when evaluating the listings. One part of this technique, 20 C.F.R. § 404.1520a(c)(2) explains that a claimant's "ability to function independently, appropriately, effectively, and on a sustained basis" depends on "such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function." *See also Kramer v. Soc. Sec. Admin.*, 2010 WL 451055, at *11-12 (E.D. Mich. Jan. 28, 2010) (explaining the full "special technique" in detail). The "technique" applies to steps two and three of the ALJ's sequential evaluation, not to the development of the RFC in the later stages. *Erbland v. Comm'r of Soc. Sec.*, 2015 WL 5578020, at *4 (W.D. Mich. Sept. 22, 2015).

The ALJ complied with listing requirements and the "special technique." (ECF No. 15, PageID.60-61.) The ALJ reviewed and rated each functional "area," giving reasons for his conclusions. (*Id.*) Regarding "understanding, remembering, or applying information," the ALJ assessed moderate limitations because although plaintiff "has reduced functioning

18

as a result of her mental impairments," medical records "do[] not reveal that her impairments markedly impact her abilities in this area." (ECF No. 15, pageID.60.) The ALJ considered records provided by Hope Network/New Passages and other treating sources and concluded that the records overall support only moderate limitations. (*Id*.) As for "interacting with others," the ALJ again rated Plaintiff's limitations as moderate because she lives with her mother and children and maintains regular contact with other family members. (*Id.*) Likewise, Plaintiff had only moderate limitations in concentrating, persisting, or maintaining pace because although she had symptoms related to depression, anxiety, and ADHD, Dr. Balunas determined that she retained the capacity to understand and remember and carry out 1-2 step instructions and have superficial contact with the public. (*Id*.) As with the other areas, Plaintiff had moderate limitations in "adapting or managing oneself" because she could independently attend medical appointments, and she is independent in preparing food, her personal hygiene, shopping, bill paying, and driving a car. (ECF No. 15, PageID.60-61.) Thus, the ALJ complied with the regulatory framework.

I further find that the ALJ's conclusions within that framework are supported by substantial evidence. As to interacting with others, the ALJ noted that Plaintiff does not live alone and is able to get along with those she lives with. In addition, although Plaintiff's agoraphobia may make leaving her home difficult, she does manage to attend her medical appointments on a regular basis and without absenteeism and she also is able to go shopping for groceries, household items, and her children's clothing needs. (ECF No. 15, PageID.87-89, 246-253.)

As to concentration, persistence, or pace, the ALJ noted the reviewing psychologist's opinion—the only medical opinion directly addressing discrete functional limitations—that most of Plaintiff's abilities were not significantly limited. (ECF No. 15, PageID.140-141.) Dr. Balunas did find Plaintiff's abilities to understand and remember detailed instructions and to interact with the general public were moderately limited. (*Id*.)[3]

Plaintiff's ability to manage herself independently is supported by Plaintiff's own reported abilities. She consistently indicated, in both her function report and at the administrative hearing, that she is able to care for herself and her children, help get them off to school, help them with their hygiene and homework, manage her own personal care, cook complete meals, do light housework, start laundry, and shop in stores for around an hour or two for food, household supplies, and children's clothing and shoes. (ECF No. 15, PageID.87-89, 246-253.) Plaintiff also indicated that she can follow written instruction "okay but I may have to read it several times to make sure I got it" and as to oral instructions, "okay but I may have to ask you to repeat the instruction several times." (ECF No. 15, PageID.252.)

Turning to the record, many of the non-counseling reports include psychiatric evidence. In these, Plaintiff was consistently noted to be alert and oriented as to person, place, and time, to have a normal mood and affect, and to be exhibiting normal behavior. (ECF No. 15, PageID.286, 289, 297, 301, 304, 308, 311, 492, 498, 505, 513, 519, 524-525,

---

[3] Although Dr. Balunas used the criteria under the previous rendition of the paragraph B criteria, (ECF No. 15, PageID.139-142), this difference does not undermine his findings or the ALJ's reliance on them. *Carbone v. Saul*, 2019 WL 4454453, at *3 (D. Mass. Aug. 29, 2019) ("There are significant areas of overlap between the old and new 'paragraph B' criteria, such that an evaluation under the old criteria would inform and assist in an evaluation under the new criteria.").

531, 545-546, 551-552, 557, 565, 571, 579-580, 585-86, 591, 594-595, 597.)

Even when Plaintiff was counseled for her mental health issues, she was also noted as being oriented as to person, place, and time, to have an appropriate affect, to be cooperative, to have normal speech, to have calm motor activity, and to have intact thought processes. (ECF No. 15, PageID.398, 399, 683, 700, 703, 709, 716, 719, 728, 732, 735, 738, 748, 752, 761, 765, 771, 775, 796, 838, 841, 891.)

At times, Plaintiff was noted to be nervous/anxious or hyperverbal and when she was suffering from the sickness and the loss of her father, and she was noted to be depressed, overwhelmed, or crying. (ECF No. 15, PageID.498, 598, 686, 689, 692, 696, 709, 712, 735, 768.)

In light of the above, I conclude that the ALJ's analysis of Plaintiff's mental impairments under Listing 12.06 satisfied the regulations and was supported by substantial evidence.

### G. **Conclusion**

For the reasons stated above, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 19) be **DENIED**, the Commissioner's Motion (ECF No. 20) be **GRANTED**, and that this case be **AFFIRMED**.

## III.   REVIEW

 Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed.

R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 10, 2020                          S/ PATRICIA T. MORRIS
                                                Patricia T. Morris
                                                United States Magistrate Judge

## <u>**CERTIFICATION**</u>

      I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to Kajdja Wicker at G3226 W. Court St., Flint, MI 48532.

Date: January 10, 2020                           By <u>s/Kristen Castaneda</u>
                                              Case Manager